631 A.2d 743

### Kenneth E. POWLEY and Penelope N. Powley, his wife, Appellants

v.

### COMMONWEALTH of Pennsylvania, DEPARTMENT OF GENERAL SERVICES.

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 1992.

Decided Aug. 24, 1993.

Joseph A. Klein, for appellants.

Charles J. Bufalino, for appellee.

Before SMITH and KELLEY, JJ., and SILVESTRI, Senior Judge.

KELLEY, Judge.

Kenneth E. Powley and his wife Penelope N. Powley (Powleys) appeal from an order of the Court of Common Pleas of Carbon County (trial court) which denied the Powleys' objections to the report of the board of view in a condemnation proceeding.

On August 30, 1982, the Commonwealth of Pennsylvania, Department of General Services (Commonwealth), filed a declaration of taking whereby pursuant to the Eminent Domain Code (Code)[1] the Commonwealth condemned and took title to a 11.1 acre tract of land owned by the Powleys in East Side Borough and Kidder Township along the Lehigh River in Carbon County. The Powleys' tract, along with others in proximity, were taken for the purposes of the preservation, dedication and conservation of the upper Lehigh Valley. The Powleys filed with the trial court a petition for the appointment of a board of view on August 24, 1987. The trial court entered an order on the same date appointing viewers to ascertain and award just compensation.

The board of view (board) held a view and hearing on October 6, 1987 and filed its report on May 18, 1988 which awarded damages to the Powleys in the amount of $40,000. The board refused to apply the "unity of use doctrine" to two additional, non-contiguous parcels of land also owned by the Powleys and used along with the condemned parcel to provide guided river-rafting trips on the Lehigh River.

The Powleys filed an appeal to the trial court from the report of the board on June 16, 1988 objecting to the board's findings and asserting the applicability of the unity of use doctrine to the two non-contiguous parcels. Following evidentiary hearings on June 1, 1989 and June 26, 1989, the trial court issued an order on March 13, 1992 which dismissed the Powleys' objections to the board's report and further held that the unity of use doctrine was inapplicable. The Powleys appeal from this order.

1. Act of June 22, 1964, Special Session, P.L. 84, *as amended*, 26 P.S. §§ 1–101—1–903.

After review of the evidence, the trial court made findings of fact which may be summarized as follows. The 11.1 acre tract condemned by the Commonwealth was acquired by the Powleys on December 3, 1980. At the time of the condemnation, the Powleys were leasing the property to Whitewater Challengers, Inc. (Whitewater), a Pennsylvania corporation.[2] Whitewater not only provides guided whitewater rafting tours of the Lehigh River, it also sells related equipment, clothing, and souvenirs. In addition, Whitewater provides rafting clinics and lodging facilities to its patrons.

Whitewater paid rent to the Powleys for the use of the property, paid the employees of the rafting operation, and paid for many of the improvements made to the property which were associated with the operation.

The Powleys claim that two non-contiguous properties are also integrated in use with the condemned property. The first is a 23 acre tract located approximately 7.6 miles from the condemned property which was purchased by the Powleys as individuals on December 31, 1979. This tract (the campground site) was used primarily as a campground and parking lot, with improvements including storage facilities, a store, administrative offices, sale and rental facilities, repair shops, a mobile home, the manager's residence and additional lodging facilities.

The camp store sold boating equipment, clothing, and souvenirs, as well as kayaks, canoes, paddles, helmets and life jackets. The kitchen area on the property was used to prepare and serve meals to patrons before and after their rafting trips. At this site, life jackets were distributed to rafters before they assembled and boarded buses which took them to the launch site on the condemned property.

The second non-contiguous tract is a 3.5 acre parcel located approximately 2.2 miles from the condemned property which was purchased by the Powleys as individuals on July 19, 1979.

---

**2.** The Powleys claim to be the sole shareholders in Whitewater Challengers, Inc., but the trial court was unable to make a finding on this matter due to conflicting evidence. The trial court determined, however, that such a finding was irrelevant to its final conclusion.

This property (the guidehouse site) was improved with the addition of an office, a storage garage and a log cabin which on the date of condemnation was used to house river guides who did not reside locally.

All three of the properties were leased by the Powleys to Whitewater pursuant to an oral agreement. The Powleys conducted other activities on the properties unassociated with Whitewater, including "climbing" which was advertised by a sign on the campground premises. Fees for camping and the photographing of camping and rafting activities were paid directly to the Powleys.

On appeal, the issue before us is whether the unity of use doctrine set forth in section 605 of the Code [3] applies to three non-contiguous parcels of land used principally by a corporate tenant but owned by a husband and wife individually, when two of the parcels are located approximately two and seven miles respectively from the condemned parcel.

██ Initially, we note that our scope of review in an eminent domain proceeding is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Harborcreek Township v. Ring,* 131 Pa.Commonwealth Ct. 502, 570 A.2d 1367 (1990).

Section 605 of the Eminent Domain Code sets forth the statutory provisions of the unity of use doctrine as follows:

Where all or a part of several contiguous tracts owned by one owner is condemned or *a part of several non-contiguous tracts owned by one owner which are used together for a unified purpose* is condemned, damages shall be assessed as if such tracts were one parcel. (Emphasis added.)

██ Under the unity of use doctrine, two separate properties are treated as one for eminent domain purposes when they are so inseparably connected by the use to which they are applied that injury to one will necessarily and permanently injure the other. *Werner v. Department of Highways,* 432 Pa. 280, 247 A.2d 444 (1968).

3. 26 P.S. § 1–605.

The Powleys submit that the campground and guide-house tracts are dependent on the condemned launch site for their existence and if not used in conjunction with the launch site, severe and permanent financial damage will result. Therefore, under the unity of use doctrine, damages should be assessed as if all three tracts were one parcel.

In *Sams v. Redevelopment Authority*, 431 Pa. 240, 244 A.2d 779 (1968), our Supreme Court held that non-contiguous tracts must have both identical users as well as identical ownership in order for the unity of use doctrine to apply under section 605. In *Sams*, one tract was owned by a partnership comprised of two individuals and the other owned by a corporation which was solely owned by the same individuals. The condemned property was owned by the partnership and used as a scrap-yard. The other non-contiguous tract was being used by the corporate entity as a foundry.

The Supreme Court held that there was no unity of use in this situation where there are not joint identical users of both parcels of land. The Supreme Court stated:

After thoroughly researching case authority in this Commonwealth, we are firmly convinced that recovery has never been permitted under the unity of use doctrine absent joint identical users of both parcels of land. In fact, the very concept of unity of use, in our view, dictates that there be identical users as well as identical ownership of the properties involved. It is difficult to conceive that a unity of use can exist when there are two separate and distinct legal entities operating each parcel of land. It is a contradiction in terms to speak of a unity of use where there is more than a single user, since implicit in the definition of unity of use is the connotation that both parcels are so completely integrated, inseparable and interdependent so as to make the operation of one impossible without the operation of the other. Where there are separate users (completely different entities) of the parcels involved, the use of both cannot be said to be so inseparable as to make them a unit for purposes of damages in a condemnation proceeding. ...

For these reasons we hold (1) that [the] unity of use doctrine necessitates a *single user* and (2) no sound, judicious reason exists why we should pierce the corporate veil in order to establish a single user for purposes of allowing increased damages in the present condemnation proceedings. (Emphasis added.)

*Id.* at 243–45, 244 A.2d at 781–82.

■ In addition, to invoke the unity of use doctrine, the relevant tracts must be in at least close proximity to one another. In *Sgarlat Estate v. Commonwealth*, 398 Pa. 406, 158 A.2d 541 (1960), the Commonwealth condemned a parcel of land used for sand and gravel extraction. The owners of the property claimed that the condemnation adversely impacted on another tract three miles away which they owned and used for the operation of a washing plant. At this non-contiguous property, sand and gravel extracted from the condemned property was washed and made suitable for commercial use. In rejecting the application of the unity of use doctrine,[4] the Supreme Court stated:

In the case before us the separation is by three miles or more, and the Forty Fort bit, where the washery is, could be used for other purposes than washing sand and gravel from the West Wyoming tract. The two parcels may form a business unit for the moment, but either could, with some adjustment, go on functioning without the other, and appellant's primary thrust is more at business damage than at land damage.

*Id.* at 411, 158 A.2d at 544.

Additionally, our Supreme Court has stated: "The important element governing the basis of determination of damages where non-contiguous tracts are involved, *in addition to the proximity of location,* is the entirety of use of the separate

4. Although section 605 was enacted subsequent to the date *Sgarlat* was decided, the statute is followed by a comment of the Joint State Government Commission in which the legislature stated that the unity of use doctrine set forth in section 605 was merely a codification of previously existing caselaw, of which *Sgarlat* forms a part.

tracts." *Morris v. Commonwealth,* 367 Pa. 410, 414, 80 A.2d 762, 764 (1951) (emphasis added).

Here, the trial court applied its findings to the guiding principles set forth in *Sams* and *Sgarlat Estate* and concluded that the unity of use doctrine likewise does not apply to the present matter. We agree.

Our review of the record reveals that while the Powleys are the owners in fee of the three non-contiguous tracts, the parcels are not used by "joint identical users" as required under the Supreme Court's decision in *Sams.* Two separate legal entities operate on the properties, Whitewater (a corporation) and the Powleys (as individuals).[5] Whitewater operates the rafting activities from the launch site and exclusively carries on the associated retail trade and meal preparation for the patrons on the other tracts. However, testimony before the trial court established that the Powleys themselves collect fees for the use of the campground, the posted "climbing" activities and the photographic services. As such, the trial court properly concluded that there are not joint identical users of the three non-contiguous tracts; rather, the use of the tracts is shared.

Moreover, the two parcels claimed by the Powleys to be integrated, inseparable and interdependent with the condemned tract are over two and seven miles removed from the launch site, respectively. When examined in light of the Supreme Court's holding in *Sgarlat,* we believe the lack of close proximity among the tracts in the present case precludes any application of the unity of use doctrine.

Finally, the Powleys base their claim on the presumption the tracts are so integrated in use that the condemnation of the launch site has permanently damaged the economic viability of the campground and guidehouse sites. Mr. Powley testified that there would be no use for the campground and

---

**5.** Even if the record established that the Powleys are the sole shareholders in Whitewater, the Supreme Court determined that the corporate veil may not be broken for the purpose of proving identical ownership. *Sams.* Therefore, proof of ownership interest in the corporation is irrelevant to our analysis here.

guidehouse tracts without the launch site. Reproduced Record (R.) at 169a–70a. However, Mr. Powley admitted that it was not the ownership of his launch site that was vital, but the *access* to any launch site that was necessary for the continuation of the rafting operations and use of the remaining two properties. R. at 170a. The possibility of leasing the same condemned property back from the Commonwealth at the completion of the taking is contemplated in the Powleys' brief.

We concede that the marketability of the non-contiguous tracts is lessened by the removal of the launch site tract from the operation. However, as our Supreme Court stated in *Sgarlat:*

> The two parcels may form a business unit for the moment, but either could, with some adjustment, go on functioning without the other, and appellant's primary thrust is more at business damage than at land damage.

*Sgarlat,* 398 Pa. at 411, 158 A.2d at 544.

Michael Warner, a real estate appraiser testifying on behalf of the Powleys, envisioned potential uses of the campground and guidehouse tracts without a dependance on the launch site. For example, Mr. Warner testified, the campground may be used by the Boy Scouts for a fully equipped camping facility, while the guidehouse has potential as a commercial/office location. R. at 307a–10a.

We believe that the record provides sufficient support for the trial court's determination that the unity of use doctrine is inapplicable to the present matter. Therefore, we conclude that the trial court did not abuse its discretion or err as a matter of law by dismissing the Powleys' objections.

Accordingly, the order of the trial court is affirmed.

## ORDER

NOW, the 24th day of August, 1993, the order of the Court of Common Pleas of Carbon County, dated March 13, 1992, at No. 87–1963, is affirmed.