**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| GIANNI PIGNETTI AND JENNIFER PIGNETTI, | : | No. 26 EAP 2023 |
| | : | |
| | : | Appeal from the Order of |
| Appellants | : | Commonwealth Court entered on |
| | : | 2/6/2023 at No. 1196 CD 2021, |
| | : | reversing the Order dated 10/6/2021 |
| v. | : | in the Court of Common Pleas, |
| | : | Philadelphia County, Civil Division at |
| | : | No. 01078 April Term, 2021. |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, | : | |
| | : | ARGUED: May 15, 2024 |
| | : | |
| Appellee | : | |
| | | |
| GIANNI PIGNETTI AND JENNIFER PIGNETTI, | : | No. 27 EAP 2023 |
| | : | |
| | : | Appeal from the Order of |
| Appellants | : | Commonwealth Court entered on |
| | : | 2/6/2023 at No. 1197 CD 2021, |
| | : | reversing the Order dated 10/6/2021 |
| v. | : | in the Court of Common Pleas, |
| | : | Philadelphia County, Civil Division at |
| | : | No. 01078 April Term, 2021. |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, | : | |
| | : | ARGUED: May 15, 2024 |
| | : | |
| Appellee | : | |

## OPINION

**JUSTICE WECHT**                                      **DECIDED: April 25, 2025**

This Court long has recognized that the condemnation of one parcel may affect the use and the value of another to such an extent that the two parcels should be valued

as one.[1]  We have applied this "plottage" principle to both contiguous and noncontiguous parcels.[2]  For the sound goal in eminent domain is to ensure just compensation to an owner whose land is condemned.[3]  It is intuitive that, in property valuation as in life, the whole sometimes is worth more than the sum of its parts.  Over sixty years ago, the General Assembly saw fit to codify this long-standing common-law principle in our Eminent Domain Code ("the Code").[4]  With noncontiguous parcels, plottage valuation applies when "a part of several noncontiguous tracts in substantially identical ownership *which are used together for a unified purpose* is condemned."[5]  In this case, the Commonwealth Court ruled that two noncontiguous parcels were not "used together for

---

[1]     *See Appeal of Elgart*, 149 A.2d 641, 643 (Pa. 1959) ("Even where there are no actual physical improvements an increment of value (plottage value) arises as a consequence of combining two or more sites, thereby developing a single site having a greater value than the aggregate of each when separately considered."); *Plottage*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The increase in value achieved by combining small, undeveloped tracts of land into larger tracts.").

[2]     *Cf. Potts v. Pa. & S.V.R. Co.*, 13 A. 291, 293 (Pa. 1888) ("[I]solated cases may perhaps exist . . . where although the lands are not in fact contiguous, yet the uses to which they are applied, respectively, are in their nature so intimate and dependent, one upon the other, that an injury to one must necessarily be taken as an injury to the whole taken together.").

[3]     *See* 26 Pa.C.S. § 701 (providing that "[a] condemnee shall be entitled to just compensation for the taking, injury or destruction of the condemnee's property").

[4]     *See* 26 P.S. § 1-605 (repealed 2006).  The 1964 Eminent Domain Code was enacted by the Act of June 22, 1964, Special Sess., P.L. 84, (codified at 26 P.S. §§ 1-101 to 1-903).  The 1964 Code was repealed by Section 5(2) of the Act of May 4, 2006, P.L. 112, No. 34 ("Act 34").  Act 34 repealed the prior iteration of the Code and enacted the consolidated Eminent Domain Code at 26 Pa.C.S. §§ 101-1106.  Section 705 of the consolidated Code replaced former Section 1-605 and included the same language pertaining to unity of use that is central to this appeal.

[5]     26 Pa.C.S. § 705 (emphasis added).

a unified purpose," and it reversed the trial court's ruling to the contrary. We believe the trial court ruled correctly. Accordingly, we reverse the Commonwealth Court's order.

## I.     Case History

On February 28, 2019, pursuant to Section 302 of the Code,[6] PennDOT filed in the trial court a declaration of taking ("Declaration") in connection with a project to improve Interstate 95 in Philadelphia. PennDOT thereby condemned, *inter alia*, a portion of property located at 1035-1041 North Front Street and 4-18 Richmond Street ("Parcel 44") and all of the property located at 22 Richmond Street ("Parcel 45").[7] The Pignettis owned Parcel 44 jointly as husband and wife, while Mr. Pignetti owned Parcel 45 individually. A third, "unoccupied and unused sliver of land no more than several square feet in area" separates the Parcels, rendering them noncontiguous.[8]

The Pignettis did not contest the taking itself. Instead, on April 14, 2021, they filed a petition ("Petition") in the trial court seeking the appointment of a board of viewers ("Board") pursuant to Section 502(a) of the Code[9] to determine just compensation for PennDOT's taking. PennDOT filed preliminary objections and a response in opposition

---

[6]     26 Pa.C.S. § 302.

[7]     We refer to Parcels 44 and 45 collectively as "the Parcels."

[8]     Trial Ct. Op., 10/6/2021, at 5 n.1 (hereinafter "T.C.O."). According to the Pignettis, at their narrowest approach, the Parcels are separated by only five to ten feet. Pignettis' Br. at 4. The Commonwealth Court described the third parcel as "a trapezoidal-shaped parcel of land [that] separates the easterly line of Parcel 44 from the westerly line of Parcel 45 by approximately 10 feet at their closest points and 90 feet at their farthest points." *Pignetti v. PennDOT*, 1196 C.D. 2021 and 1197 C.D. 2021, 2023 WL 1773952, at *1 (Pa. Cmwlth. Feb. 6, 2023) (hereinafter "*Pignetti*"). PennDOT does not dispute these descriptions.

[9]     26 Pa.C.S. § 502(a) (providing that "[a] condemnor, condemnee or displaced person may file a petition requesting the appointment of viewers").

to the Petition, asserting: (1) that the Pignettis waived their damages claim by failing to file preliminary objections to PennDOT's Declaration; and (2) that there was not "substantially identical ownership"[10] between the Parcels so as to entitle the Pignettis to have the Parcels valued together as one, because PennDOT had an ownership interest in Parcel 45 by virtue of an easement.[11] The Pignettis filed an answer to PennDOT's preliminary objections, disputing both that they were required to file preliminary objections to the Declaration and that PennDOT had any ownership interest in Parcel 45.

Thereafter, the parties stipulated to certain matters and filed supplemental briefs. It was in this supplemental briefing that the issue of whether the Pignettis used the Parcels "together for a unified purpose" came to the fore. PennDOT claimed that the Parcels were noncontiguous and that the Pignettis had not alleged that the Parcels were used together for a unified purpose as required by Section 705 of the Code. On PennDOT's account, the Pignettis had waived their plottage claim.[12]

In response, the Pignettis insisted that they used the Parcels together for a unified purpose. The Pignettis explained that Mr. Pignetti owned an electrical business and that

---

[10] 26 Pa.C.S. § 705.

[11] Whether PennDOT has an easement or any ownership interest at all in either parcel is disputed. The trial court found that PennDOT had no ownership interest. *See* T.C.O. at 3-4.

[12] As the Commonwealth Court detailed, the lower court pleadings and proceedings were riddled with opportunities for the parties to raise, and the trial court to find, various waivers by both parties. *See Pignetti*, at *2-5. In sum, though, neither took advantage of these opportunities at the appropriate times. Because the trial court and the Commonwealth Court deemed the Section 705 issue to be sufficiently preserved and ripe, because none of the omissions implicated any court's subject matter jurisdiction, and because neither party pursues a waiver argument before this Court, we, too, overlook these procedural anomalies.

he used the Parcels to store equipment and trucks for that business. The Pignettis attached an affidavit of Mr. Pignetti to that effect along with corroborating photographs.[13]

On September 27, 2021, the trial court held an evidentiary hearing. Mr. Pignetti testified that, prior to PennDOT's taking, he had "always used the [Parcels] for [his] electrical business to store vehicles, equipment, materials, et cetera."[14] He added that the main office for his business is at a third location approximately one mile away from the Parcels.[15] Mr. Pignetti explained that, though a small garage is located at the third location, he "needs" and "uses" the Parcels for storage for his business.[16]

On October 6, 2021, the trial court overruled PennDOT's preliminary objections. In its accompanying memorandum, the trial court first found that the Pignettis had not waived their plottage claim. The trial court then determined that the Parcels had substantially identical ownership and that the Pignettis used the Parcels together for a unified purpose. The court concluded that the "unity of purpose" requirement under Section 705 of the Code "means that the parcels are used for the same purpose."[17] The

---

[13] The Pignettis also presented argument and evidence relative to, *inter alia*, their intent to develop or sell the Parcels together for a residential development. The Commonwealth Court held that the evidence of future development plans was irrelevant "because only the use to which the property was placed at the time of the filing of the Declaration . . . should be considered." *Pignetti*, at *3 n.7 (citing *W. Whiteland Assocs. v. PennDOT*, 690 A.2d 1266, 1270 (Pa. Cmwlth. 1997)). Before this Court, the Pignettis do not contend otherwise. *But see N. Shore R.R. Co. v. Pa. Co.*, 96 A. 990, 992 (Pa. 1916) ("The true rule is that any use for which the [condemned] property is capable may be considered" for purposes of assessing compensation.).

[14] Notes of Testimony, 9/27/2021, at 35.

[15] *Id.* at 37-38.

[16] *Id.*

[17] T.C.O. at 5 (citing *W. Whiteland*, 690 A.2d at 1270; *Powley v. Dep't of Gen. Servs.*, 631 A.2d 743 (Pa. Cmwlth. 1993)).

court found that Mr. Pignetti's testimony established that he used the Parcels together for the same purpose—*i.e.*, storage for vehicles and equipment connected to his electrical business. Thus, in a separate order filed the same day, the trial court granted the Pignettis' Petition to appoint a Board of Viewers.

In a unanimous, unreported memorandum opinion, the Commonwealth Court reversed. PennDOT argued, and the Commonwealth Court agreed, that the Pignettis did not prove that they used the Parcels together for a unified purpose.[18] The Commonwealth Court noted that Section 705 provides that "[w]here . . . a part of several noncontiguous tracts in substantially identical ownership *which are used together for a unified purpose* is condemned, damages shall be assessed as if the tracts were one parcel."[19] The Commonwealth Court observed that a condemnee bears the burden of establishing that noncontiguous tracts are used together for a unified purpose.[20]

The Commonwealth Court then examined what a condemnee must prove to demonstrate that noncontiguous parcels are "used together for a unified purpose." In doing so, the Commonwealth Court did not analyze the plain meaning of that phrase. Rather, the Commonwealth Court turned directly to Section 705's legislative history and

---

[18]  PennDOT also reasserted that the Pignettis did not establish that the Parcels shared "substantially identical ownership" under Section 705 of the Code. Because the Commonwealth Court agreed with PennDOT that the Pignettis did not establish that they used the Parcels together for a unified purpose, it declined to address the alleged lack of "substantially identical ownership." *Pignetti*, at *6.

[19]  *Id.*, at *5 (quoting 26 Pa.C.S. § 705) (emphasis in original).

[20]  *Id.* (citing *W. Whiteland*, 690 A.2d at 1270).

case law.[21]  The Commonwealth Court looked to the Code's first codification in 1964.  A Joint State Government Commission Comment to then-Section 1-605 provided that "[t]his section codifies existing case law," and the comment cited *Morris v. Commonwealth*,[22] specifically with regard to "non-contiguous tracts."[23]  Thus, the court reasoned, the General Assembly clearly intended that *Morris* should inform the application of now-Section 705 to noncontiguous parcels.

The Commonwealth Court then turned to *Morris*, in which this Court held that "two properties having no physical connection may be regarded as one in the assessment of damages" when they are "so inseparably connected in the use to which they are applied as that the injury or destruction of one must necessarily and permanently injure the other."[24]  According to the *Morris* Court, "'proximity of location' was an 'important element governing the basis of determination of damages where non-contiguous tracts are involved.'"[25]  Although *Morris* predated the original enactment of the Code, the Commonwealth Court pointed out that it had applied the *Morris* standard in cases decided

---

[21]    *See id.* ("To determine what a condemnee must prove to satisfy Section 705's unified purpose language, we look to Section 705's legislative history and our subsequent case law.").

[22]    80 A.2d 762 (Pa. 1951).

[23]    26 P.S. § 1-605 cmt. (JOINT STATE GOV'T COMM'N 1964) (repealed 2006).  The same comment remains at Section 705.

[24]    *Pignetti*, at *6 (quoting *Morris*, 80 A.2d at 763) (emphasis omitted).

[25]    *Id.* (quoting *Morris*, 80 A.2d at 764).

after the Code's enactment.[26]  The Commonwealth Court concluded that the standard described in *Morris* governed.

The Commonwealth Court then rejected the trial court's conclusion that the Pignettis established that they used the Parcels together for a unified purpose merely because they used the Parcels "for the same purpose."[27]  It concluded that mere "sameness" did not satisfy the *Morris* standard.  The court explained:

> Mr. Pignetti's testimony . . . at best[] established he parked vehicles and stored equipment for his electrical business on [the] Parcels . . . .  Mr. Pignetti did not testify regarding the effects of the loss of one of the parcels on the other, or on his electrical business in general.  This evidence, although sufficient to show the Pignettis used [the Parcels] together, was not sufficient to establish the [P]arcels "are so inseparably connected by the use to which they are applied that injury to one will necessarily and permanently injure the other."  *Morris*, 80 A.2d at 763; *Powley*, 631 A.2d at 745.[28]

The Commonwealth Court thus concluded that the Pignettis were not entitled to have the Board assess damages as though the Parcels were one.  It reversed the trial court's contrary orders and directed the trial court to enter an order granting PennDOT's demurrer relative to the unity-of-use question.

---

[26]  *Id.* (citing *Powley*, 631 A.2d at 745 ("Under the unity of use doctrine, two separate properties are treated as one for eminent domain purposes when they are so inseparably connected by the use to which they are applied that injury to one will necessarily and permanently injure the other.")).  The Commonwealth Court also noted *Kossler v. Pittsburg, Cincinnati, Chi. & St. Louis Ry. Co.*, 57 A. 66 (Pa. 1904), and *Werner v. Dep't of Highways.*, 247 A.2d 444 (Pa. 1968), as cases in which our Court recited a similar standard both before and after the Code's original enactment.

[27]  *Pignetti*, at *6 (citing T.C.O. at 5).

[28]  *Id.*

This Court granted allowance of appeal to take up that question.[29]

## II. The Parties' Arguments

The Pignettis assert that their use of the Properties met Section 705's requirements. Echoing the trial court, they point to the uncontradicted evidence that Mr. Pignetti used the Parcels together to store vehicles and equipment for his electrical business. The Pignettis argue that the Commonwealth Court erred by requiring that the Parcels be "so inseparably connected that the loss of one would necessarily and permanently injure the other," and then concluding that the Parcels did not meet that heightened standard.[30] The Pignettis contend that *Morris*'s necessary-and-permanent-injury standard is stricter than Section 705 requires.

The Pignettis also argue that *Morris* and the other cases relied upon by the Commonwealth Court are not controlling because they predate—and thus do not interpret—Section 705 or its predecessor, Section 1-605. They argue that the Joint State Government Commission's reference to *Morris* stands only for the proposition that Section 1-605 codified the common-law concept of plottage for qualifying noncontiguous parcels. They point out that, if the General Assembly had intended for Sections 1-605 or

---

[29] The questions we elected to review, which combine to form a single challenge regarding unity of use, are:

(1) Did the Commonwealth Court err in disregarding established precedent by adding requirements to Eminent Domain Code Section 705 that are not contained in and are contrary to the clear wording of that Section[?]

(2) Did the Commonwealth Court err in reversing the Trial Court's application of Eminent Domain Code Section 705 when Condemnees met the clear requirements of that Statute[?]

*Pignetti v. PennDOT*, 304 A.3d 705 (Pa. 2023) (*per curiam*).

[30] Pignettis' Br. at 13.

705 to apply the *Morris* standard, it could have included something like that language in those sections—but it did no such thing.[31] Moreover, even if the comment reflected a legislative *desire* to impose the heightened standard, the comment conflicts with, and thus must yield to, the plain meaning of the statutory text.[32]

The Pignettis add that, even if Section 705 is ambiguous,[33] the Commonwealth Court's holding contradicts the intent of the Code generally and Section 705 specifically. The purpose of Section 705 is "to ensure 'that condemnees receive just compensation,'" and the provision "must be 'liberally construed to effect its object and provide a just result.'"[34] Section 705, the Pignettis argue, is designed "to ensure that just compensation considers [plottage] in appropriate cases such as the instant case."[35]

PennDOT contends that "[t]he explicit language of the statute, its commentary, and the cases leading to the codification of this statutory language confirm that multiple properties may be treated as one for eminent domain purposes when the use is so inseparably connected that injury to one will necessarily and permanently injure the other."[36] Focusing on the words "unified" and "purpose," PennDOT submits that their meaning is clear using common dictionary definitions and that, taken together, they

---

[31] *Id.* at 14.

[32] *Id.* at 14-15 (citing 1 Pa.C.S. § 1939 (providing that "the text of the statute shall control in the event of conflict between its text and . . . comments")).

[33] Ambiguity is found where a statute is susceptible to two or more reasonable interpretations. *Franczyk v. Home Depot, Inc.*, 292 A.3d 852, 856 (Pa. 2023).

[34] Pignettis' Br. at 16 (quoting *PennDOT v. Beamer*, 493 A.2d 130, 133 (Pa. Cmwlth. 1985)).

[35] *Id.*

[36] PennDOT's Br. at 10-11.

require "more than just two parcels with similar characteristics. Rather, [they] require[] parcels integrated to accomplish a single end."[37] PennDOT notes that "using tracts for the *same* purpose—*i.e.,* using both properties in a common way—and a *unified* purpose—*i.e.*, for a single, wholistic purpose—are distinct concepts," although PennDOT is vague as to the nature of the distinction.[38]

PennDOT also argues that its plain text interpretation is consistent with pre-Code case law, which the General Assembly intended to codify. PennDOT emphasizes that the General Assembly has not altered the unity-of-use language since its original codification in Section 1-605 despite the fact that (1) the General Assembly has amended other language used in Section 705; and (2) Pennsylvania courts have decided cases following the original enactment of the Code echoing the *Morris* standard that the Commonwealth Court applied in this matter. According to PennDOT, this suggests that the legislature has no quarrel with the *Morris* interpretation and cases that followed.

PennDOT asserts that the Pignettis' interpretation would produce absurd results, while its interpretation "ensures that noncontiguous parcels receive a higher valuation only when they are in fact used together."[39] "Property being merely used in the same way does not show that the properties warrant the higher valuation that may come when there is a single use."[40] If the Pignettis' interpretation is correct, PennDOT maintains, "there would be no meaningful restriction on what noncontiguous parcels could be valued as

---

[37]   *Id.* at 11.

[38]   *Id.* at 12 (emphasis in original).

[39]   *Id.* at 15.

[40]   *Id.*

one," which contravenes the intent of the Code.[41]  According to PennDOT, he Pignettis "presented no evidence that the [P]arcels were so inseparably connected that the loss of one would necessarily and permanently injure the other, or in fact that they were used together for a unified purpose."[42]  Rather, PennDOT asserts, the Parcels merely serve as "overflow parking for a business on a remote and unaffected parcel."[43]

### III.    Discussion[44]

#### A.    Statutory Interpretation

As noted earlier, the Commonwealth Court eschewed analysis of the text of Section 705.  Instead, it turned immediately to the Joint State Government Commission's 1964 commentary, and the citation of *Morris* therein.  In doing so, it turned the interpretive exercise—which should always begin with the statutory text—on its head.[45]

---

[41]    *Id.*

[42]    *Id.* at 16.

[43]    *Id.*

[44]    Because we address a pure question of law, we apply a *de novo* standard of review, and the scope of our review is plenary.  *In re Vencil*, 152 A.3d 235, 241 (Pa. 2017).

[45]    The Commonwealth Court's approach recalls the following anecdote:

"One should consult the text of the statute," the joke goes, "only when the legislative history is ambiguous."  Alas, that is no longer funny.  Reality has overtaken parody.  A few terms ago, I read a brief that *began* the legal argument with a discussion of legislative history and then continued (I am quoting it verbatim): "Unfortunately, the legislative debates are not helpful.  Thus, we turn to the other guidepost in this difficult area, statutory language."

Antonin Scalia, A MATTER OF INTERPRETATION 31 (1st ed. 1997) (emphasis in original).

The object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly."[46]  Generally, the plain language of the statute "provides the best indication of legislative intent."[47]  If the language is clear and unambiguous, "we cannot disregard the letter of the statute under the pretext of pursuing its spirit."[48]  Similarly, "we should not insert words into [a statute] that are plainly not there."[49]

"Words and phrases shall be construed according to rules of grammar and according to their common and approved usage."[50]  We presume "that 'the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable,' and that 'the General Assembly intends the entire statute to be effective and certain.'"[51]

When statutory language is ambiguous, however, we may ascertain the General Assembly's intent by considering the factors set forth in Section 1921(c) of the Statutory Construction Act and other rules of statutory construction.[52]  Relevant considerations include:

---

[46]     1 Pa.C.S. § 1921(a).

[47]     *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1168 (Pa. 2017) (citing 1 Pa.C.S. § 1921(b)).

[48]     *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa.C.S. § 1921(b)).

[49]     *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012).

[50]     1 Pa.C.S. § 1903(a).

[51]     *Berner v. Montour Twp. Zoning Hearing Bd.*, 217 A.3d 238, 245 (Pa. 2019) (quoting 1 Pa.C.S. §§ 1922(1)-(2)).

[52]     *See Pa. Sch. Bds. Ass'n, Inc. v. Pub. Sch. Emps. Ret. Bd.*, 863 A.2d 432, 436 (Pa. 2004).

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.[53]

In the event of ambiguity, we also may consider the commentary of certain legislative drafting bodies:

> The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, but the text of the statute shall control in the event of conflict between its text and such comments or report.[54]

### B. The Plain Language of Section 705 Compels Reversal.

In keeping with the above, we begin with Section 705's text:

### § 705. Contiguous tracts and unity of use

Where all or a part of several contiguous tracts in substantially identical ownership is condemned or a part of several noncontiguous tracts in substantially identical ownership *which are used together for a unified purpose* is condemned, damages shall be assessed as if the tracts were one parcel.[55]

---

[53]  1 Pa.C.S. § 1921(c).

[54]  *Id.* § 1939; *see In re Trust under Deed of David P. Kulig*, 175 A.3d 222, 230 (Pa. 2017) ("Section 1939 is relevant only when the statute is unclear.").

[55]  26 Pa.C.S. § 705 (emphasis added).

At issue in this case, which involves just-barely-noncontiguous parcels used by an electrical company for storing vehicles and equipment, is whether the Parcels "are used together for a unified purpose."

In search of statutory terms' common and approved usages, this Court sometimes—but not always—consults dictionaries.[56] We must not substitute dictionary definitions of highly general, familiar terms for statutory text where, as here, the question arises as to *which* definition's text to insert. And we should be wary of relying upon dictionary definitions to find ambiguity where the reasonable reader would perceive none.[57]

The first word to unpack in Section 705 is "together." To understand the General Assembly's choice of that familiar word, we must consider the context of the full one-sentence provision in which it appears. It is a "cardinal rule of statutory construction" that "we must give terms in a statute the meaning dictated by the context in which they are used."[58] The dictionary, by our reckoning, is of little benefit here because "together"

---

[56] *See O'Neill v. State Emps.' Ret. Sys.*, 280 A.3d 873, 885 (Pa. 2022) ("To discern the legislative meaning of words and phrases, our Court has on numerous occasions engaged in an examination of dictionary definitions."). Sometimes the enterprise is ineffective. For example, in *Commonwealth v. Smith*, 221 A.3d 631, 637 (Pa. 2019), we encountered difficulty consulting several dictionaries in an effort to define the world "altered." *See also Commonwealth v. Strunk*, 325 A.3d 530, 539 (Pa. 2024) (concluding that dictionary definitions of "contact" failed to "dispel any ambiguity" in the statute).

[57] "[W]e must consider the statutory language in its full context before we assess ambiguity, [and] we must not overlabor to detect or manufacture ambiguity where the language reveals none." *Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1264 (Pa. 2020) (footnotes omitted).

[58] *Phila. Hous. Auth. v. Com., PLRB*, 499 A.2d 294, 299 (Pa. 1985); *see Reibenstein v. Barax*, 286 A.3d 222, 230 (Pa. 2022).

indisputably has myriad shadings of use.[59]  But resort to the dictionary isn't necessary here.  Together is a more or less irreducible word, and one with a manifestly familiar meaning.  Turning to its usage in the statute, "*used* together" effectively hones that common understanding, again by reference to an essentially irreducible meaning.  Two tracts are "used together" when they are *used together*.  It adds little to say, for example, that they are employed in tandem or in concert, phrases the common reader would take much the same way.  Consider, next, the full clause under scrutiny: "used together *for a unified purpose*."  Does the addition of "for a unified purpose" complicate things to the point of ambiguity, or does it sharpen them?  It seems clear that "unified" implies one-ness, a proposition for which we may cite common sense alone.  "Purpose," too, is a self-evident term, referring to an end in view or an intention.

What is perhaps most telling is that PennDOT, in its effort to establish Section 705's ambiguity, in fact makes a fairly persuasive case that the plain language favors the Pignettis:

> Here, the critical text is "unified purpose," and its meaning is clear. Something is "unified" if it is "brought together as one[,"] "made one[,"] "combined or united."  A "purpose" is "something set up as an object or end to be attained."  Together, the phrase specifies more than just two parcels

---

59      For example, just one dictionary offers this encompassing set of definitions:

*adv.* **1**. In or into a single group, mass, or place; *gather together*.  **2**. In or into contact: *mixed together*.  **3**.**a**. In association with or in relationship to one another; mutually or reciprocally: *getting along together*. **b**. By joint or cooperative effort: *ironed together*. **4**. Regarded collectively; in total: *worth more than all of us together*.  **5**. In or into a unified structure or arrangement: *put it together*.  **6**. Simultaneously: *rang out together*.  **7**. In harmony or accord: *stand together*.

*Together*, THE AMERICAN HERITAGE COLLEGE DICTIONARY 1423 (3d ed. 1993).

with similar characteristics. Rather, it requires parcels integrated to accomplish a single end.[60]

On any reading grounded in common usage, storage is one "end to be attained" in service of the Pignettis' electrical business, here effectuated by using two nearly adjacent tracts to attain that unitary purpose. By our reckoning, this indicates that the Parcels are more than merely "two parcels with similar characteristics." The properties in question are "made one" in the sense that they serve together to store Mr. Pignetti's business' equipment. And in that way, too, they are combined or united. Nor are we convinced by PennDOT's conclusory effort to distinguish "sameness" from "unification." PennDOT would have us conclude that "using tracts for the *same* purpose—*i.e.*, using both properties in a common way—and a *unified* purpose—*i.e.*, for a single wholistic purpose—are distinct concepts."[61] But it fails to offer a satisfactory account as to why. We need not rely on such tortured distinctions to honor the General Assembly's intent.[62]

If our account is consonant with a plain-language approach, then the case becomes easy. The lots, separated by a few paces, are used together for the one purpose of storing vehicles and equipment in service of Mr. Pignetti's business. To say more is to complicate a straightforward matter, and to do so unnecessarily.

---

[60] PennDOT's Br. at 11 (footnotes citing three lay dictionaries and one legal dictionary omitted).

[61] *Id.* at 12.

[62] Later in its brief, PennDOT indicates that "unified purpose" is satisfied by use "for a single, collective purpose." *Id.* at 14. This formulation does not exclude storage spanning two lots in close proximity as a unified purpose under Section 705.

### C. Ambiguity, Too, Requires Reversal.

Even if we found the language of the statute to be ambiguous, the result would be the same. Faced with unclear statutory language, we have an array of tools at our disposal. Among these, it is true, is the Joint State Government Commission's commentary, which, by its citation of *Morris*, might suggest a reading of Section 705 restrictive enough to favor PennDOT.

But, unlike the Commonwealth Court, we believe it both necessary and beneficial to consider other commonly deployed tools of construction before settling on a dispositive account of the legislative intent. Relevant considerations include the "occasion and necessity for the statute"; "the mischief to be remedied" and "object to be attained"; "the former law"; and "[t]he consequences of a particular interpretation."[63] These considerations are neither exhaustive nor prescriptive. They serve, merely, to guide the sometimes difficult task of untangling ambiguous statutory language to reveal legislative intent.

Notably, the Statutory Construction Act itself adds an eminent domain-specific rule that speaks unequivocally to the mischief to be remedied and the object to be attained. Specifically, the Act provides that "[p]rovisions conferring the power of eminent domain," such as the statute here at issue, shall be "strictly construed."[64] "Eminent domain statutes are strictly construed against the [condemnor]. If two possible meanings of a word [in a statute] conflict, the word favoring the individual is adopted."[65] Whether it is "together" or

---

[63] 1 Pa.C.S. § 1921(c).

[64] *Id.* § 1928(b)(4).

[65] *Hughes v. PennDOT*, 523 A.2d 747, 751 (Pa. 1987).

"unified purpose" we find ambiguous, or both, we must construe each as well as the whole they constitute in the sense most favorable to the Pignettis as condemnees.[66]

Curiously, given the centrality of the text in statutory analysis, the Commonwealth Court and PennDOT never address whether the Joint Commission Comment actually illuminates *the text of the statute*, as such. In its entirety, the Comment reads: "This section codifies existing case law. *Morris v. Commonwealth*, [80 A.2d 762 (Pa. 1951)] (noncontiguous tracts); *H.C. Frick Coke Co. v. Painter*, [48 A. 302 (Pa. 1901)] (contiguous tracts)."[67] This could well mean, as the lower court appears to have concluded summarily, that the Joint State Government Commission intended to embrace the stricter standard stated in *Morris* and elsewhere. But it might also reflect nothing more than an invocation of the common-law source of plottage *simpliciter*. It was perilous for the Commonwealth Court to rely chiefly upon the Commission's invocation of *Morris* to untangle the statute's putative ambiguity when the intent of the invocation is itself unclear.

Another textual consideration militates against adopting the *Morris* test into Section 705—this one found in the contrasting 1985 Joint State Government Commission Comment to Section 705. The 1985 amendment in no way changed the language regarding the unity-of-use requirement. But it *did* change the language pertaining to ownership. Section 1-605 provided that, when "a part of several non-contiguous tracts

---

[66] The Dissent concludes that the word "together" as used In Section 705 is ambiguous, with one acknowledged meaning compatible with our reading. *See* Diss. Op. at 2-3 n.1. Nevertheless, without so much as a nod toward the statutorily and precedentially prescribed presumption in favor of the condemnee, the Dissent instead zeroes in on the commentary to Section 705, and particularly its citation of *Morris*, as grounds to resolve the ambiguity in favor of the condemnor.

[67] 26 Pa.C.S. § 705 cmt. (JOINT STATE GOV'T COMM'N 1964).

owned by one owner" was condemned, plottage might apply, while Section 705 extended that principle to tracts "in substantially identical ownership." In this connection, the Commission was at pains in its 1985 commentary to underscore that this "new standard replace[d] the 'owned by one owner' standard of former section 605 and provide[d] the court with more flexibility in reckoning with the different ownership schemes a person may choose to employ," adding that the amendment "specifically reverse[d]" this Court's holding in *Sams v. Redevelopment Authority of New Kensington*.[68] that, "although the same individuals composed the entities involved, the fact that one parcel (condemned) was owned by a partnership and the other parcel (not condemned) by a corporation precluded recovery under" Section 1-605. When the Commission wishes to elaborate upon the intended effect of new statutory language on the operation of that statute's new governing text, it knows how to do so.

In so many words, PennDOT asks this Court to conclude that, rather than simply using the *Morris* language in Sections 1-605 or 705, the Joint State Government Commission and the General Assembly intended that laypeople would look at common and relatively inclusive words to understand their rights relative to their own constitutionally protected property interests,[69] but remain skeptical enough of those terms that they would look to the Joint Commission commentary in search of further guidance. There, these same laypeople would find a case citation without explanation and recognize

---

[68]     244 A.2d 779, 781 (Pa. 1968).

[69]     *See* U.S. CONST. amend. V ("[N]or shall private property be taken for public use, without just compensation."); PA. CONST. art I § 10 ("[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.").

that the statute could not be understood without first consulting that decision. They would then figure out where to find that case, would look it up, and would then parse whether their noncontiguous parcels were entitled to valuation as a unified whole—a consequential question considered in the context of the right to just compensation for a government taking of property. It is difficult to imagine a more tortuous journey to understanding a statute employing common language—for a lawyer, let alone for a non-lawyer. At a minimum, it is fair to say that we should not assume such an intention when a more direct, sensible reading of the statute is available that is compatible with presumptions baked into both our Statutory Construction Act and our case law.

PennDOT also claims support in the fact that the General Assembly declined to modify the relevant language between its original enactment and its recodification as Section 705. PennDOT appears to suggest—albeit without citation—the application of Section 1922(4) of the Statutory Construction Act, which allows us to presume "[t]hat when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language."[70] The difficulty here is that we have *never* actually parsed the "use[] together for a unified purpose" language used by the General Assembly in Sections 1-605 and 705 in the half-century since their codification.

Since Section 1-605 was enacted, we have cited one of those sections or "the *Morris* standard" in a grand total of four cases. Our *Sams* decision concerned identity of

---

[70]   1 Pa.C.S. § 1922(4); *see Hunt v. Pa. State Police*, 983 A.2d 627, 637 (Pa. 2009) (citing the "presumption that our construction of a statute reflects the intent of the legislature when the General Assembly revisits a statutory provision but does not amend the statute in a manner contrary to our Court's view").

ownership, not unity of use. It mentioned the commentary's citation of *Morris* as reflecting the desire to codify existing law, but for the ownership-related question presented in *Sams*. The Court's reliance upon that ownership standard in *Sams* was not in tension with the plain language of Section 1-605, which in relevant part required that the noncontiguous tracts submitted for singular valuation be "owned by one owner." *Sams* took that phrase at face value, and no amount of probing the dictionary was going to cast a shadow on it.

The other cases are even less illuminating, providing no interpretation of "used together for a unified purpose" for the legislature to have embraced by implication in subsequent enactments. In *Szabo v. PennDOT*,[71] the question roughly pertained to preservation of a unity-of-use claim under Section 705. *City of Chester v. PennDOT*[72] concerned evidentiary matters pertaining to a Section 1-605 claim. *Werner v. Commonwealth, Department of Highways*[73] did not even cite the unity-of-use requirement—it cited only *Morris* itself. Like *Chester*, it concerned evidentiary considerations pertaining to an entirely different doctrine.

PennDOT argues that "if the Pignettis are right there would be no meaningful restriction on what noncontiguous parcels could be valued as one."[74] Thus, even if two parcels employed for storage were separated by a city block, they might be valued as a single parcel. There is something to PennDOT's concern. There can be no question that

---

[71]    202 A.3d 52 (Pa. 2019).

[72]    434 A.2d 695 (Pa. 1981).

[73]    247 A.2d 444 (Pa. 1968).

[74]    PennDOT's Br. at 15.

decisions in this area necessarily will be fact-sensitive. But *Morris* itself noted that proximity is a relevant consideration,[75] and, as proximity diminishes, so does the common sense of the "entirety" of the use of the tracts in question, *i.e.*, the degree to which they are used together.[76]

What we are left with is the fact that the Commonwealth Court's ruling effectively adds language to Section 705 that the legislature declined to include. Nothing in the statutory text requires anything remotely akin to a common use so "inseparably connected" that injury to one "necessarily and permanently injure[s] the other." Nor does anything about our takings jurisprudence justify setting the bar so high to attain just compensation for a taking that affects the combined value of two or more parcels in demonstrable ways. Whether confronted with a clear or ambiguous statute, this Court must not "add statutory language where we find the extant language somehow lacking."[77] The Commonwealth Court did so here.

## IV.    Conclusion and Disposition

Whether we rely upon the common and approved meaning of the terms used by the statute, or proceed from the premise that the language used in Section 705 is ambiguous, we arrive at the same destination. Given the law's explicit bias in favor of individual property interests as against condemnors, the Commonwealth Court erred in the other direction, relying on extrinsic, extra-textual considerations to arrive at an

---

[75]    *See Morris*, 80 A.2d at 764.

[76]    "The important element governing the basis of determination of damages where noncontiguous tracts are involved, in addition to the proximity of location, is the entirety of use of the separate tracts." *Elgart*, 149 A.2d at 643 (quoting *Morris*, 80 A.2d at 764).

[77]    *Sivick*, 238 A.3d at 1264.

interpretation more restrictive relative to condemnees' interests than the statute calls for. Thus, we reverse.

Our ruling effectively revives the question of whether the Pignettis satisfy Section 705's "substantially identical ownership" requirement relative to the Parcels. As alluded to earlier, this requirement was softened somewhat in 1985 from the previously applicable identity of ownership standard. PennDOT argued below that its alleged pre-existing easement upon one of the Parcels confers upon it an ownership interest that interferes with the substantially identical ownership requirement. The trial court made quick work of this line of argument, concluding that the Pignettis had established substantially identical ownership of the Parcels for purposes of Section 705.[78] The Commonwealth Court, rejecting plottage on other grounds, did not review the trial court ruling in this regard, even though PennDOT raised the issue.[79] Although in an abundance of caution, the parties have argued the issue at length,[80] we did not accept review of that question. We will not take it up in the first instance. We do not foreclose further consideration of that issue on remand.

The Commonwealth Court order is hereby reversed. The case is remanded for further proceedings consistent with this opinion.

Chief Justice Todd and Justices Dougherty and Mundy join the opinion.

Justice Brobson files a dissenting opinion in which Justices Donohue and McCaffery join.

---

[78]     T.C.O. at 3-4.

[79]     *Pignetti*, at *6.

[80]     *See* Pignettis' Br. at 18-22; PennDOT's Br. at 18-21.